IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JAMES D. JESSUP,

      Plaintiff,

      v.

CAROLYN W. COLVIN, *Commissioner of Social Security*,

      Defendant.

12cv1166
**ELECTRONICALLY FILED**

## I. INTRODUCTION

James D. Jessup ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 – 1383f ("Act"). This matter comes before the Court upon cross-motions for summary judgment. (Doc. Nos. 11 & 13). The record has been developed at the administrative level. For the following reasons, Plaintiff's Motion for Summary Judgment (doc. no. 13) will be DENIED, and Defendant's Motion for Summary Judgment (doc. no. 11) will be GRANTED.

## II. PROCEDURAL HISTORY

Plaintiff filed for SSI with the Social Security Administration on April 20, 2009, claiming an inability to work due to disability beginning January 15, 2001. (Transcript ("Tr.") at 11). Plaintiff was initially denied benefits on January 7, 2010. (Id.).[1] A hearing was scheduled for

---

[1] Plaintiff was granted SSI on a subsequent application with an onset date of April 6, 2011. Therefore, Plaintiff is seeking benefits on a closed period from April 20, 2009 through April 6, 2011.

October 21, 2010. (Id.). Plaintiff appeared to testify, and was represented by counsel. (Id.). A vocational expert ("VE") also testified. (Id.). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on November 22, 2010. (Tr. at 11-21). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on June 28, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. (Tr. at 1-5).

Plaintiff filed his Motion for In Forma Pauperis (IFP) status, and his Complaint in this Court on August 14 and 16, 2012. (Doc. Nos. 1 & 2). Defendant filed her Answer on December 19, 2012. (Doc. No. 5). Cross-motions for summary judgment followed. (Doc. Nos. 11 & 13).

### III. STATEMENT OF THE CASE

The ALJ made the following findings in denying Plaintiff's application for SSI:

1. The claimant has not engaged in substantial gainful activity since April 20, 2009, the application date (20 CFR 416.971 et seq.). (Tr. 27);
2. The claimant has the following severe impairments: depression, anxiety, post-traumatic stress disorder, cognitive disorder, learning disorder, obesity, chronic knee and back pain (20 CFR 416.920(c). (Id.);
3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairment in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926). (Tr. 28);
4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he: can no more than occasionally perform postural adaptations such as stooping, kneeling, crouching, crawling, balancing or climbing; cannot be exposed to hazards such as unprotected heights or dangerous machinery; and requires a discretionary sit/stand option. The claimant is also limited to simply, routine, repetitive tasks involving: no exercise of independent judgment or discretion; no more than incidental changes in work processes and no interaction with the general public (Tr. 30);
5. The claimant is unable to perform any past relevant work (Tr. 38);
6. The claimant was born on May 28, 1961, and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed (Tr. 39);
7. The claimant has at least a high school education and is able to communicate in English (Tr. 39);

8. Transferability of job skills is not an issue because the claimant's past relevant work is unskilled (20 CFR 416.968) (Id.);
9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform 20 CFR 416,969 and 416.969(a)); (Id.) and,
10. The claimant has not been under a disability, as defined in the Social Security Act, since April 20, 2009, the date the application was filed (20 CFR 416.920(g)) (Tr. 40).

## IV.  STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law. *Schandeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F. 3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F. 3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F. 3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically

determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F. 2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F. 2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F. 2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the

impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'r v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F. 3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

**V.    DISCUSSION**

Plaintiff objects to the determination of the ALJ, arguing: (1) that the Mental Residual Functional Capacity (RFC) is not supported by substantial evidence because Plaintiff's ability to interact with coworkers and supervisors was improperly found to be unlimited; and, (2) that the Vocational Expert (VE) cannot provide substantial evidence to support the denial. Doc. No. 14

5

at 10-14. Defendant counters that the ALJ had substantial evidence that Plaintiff can perform a wide range of simple, routine, light work which his RFC defined, that the ALJ properly weighed the medical opinions of record and considered all of Plaintiff's symptoms to the extent they could reasonably be accepted as consistent with the objective medical evidence, and that substantial evidence supports the ALJ's credibility analysis. (Doc. No. 12 at 9-15).

When rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)). The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the Court to determine whether any rejection of potentially pertinent, relevant evidence was proper. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203-04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706). In the present case, the ALJ adequately met his responsibilities under the law.

    A.    <u>Plaintiff's Residual Functional Capacity (RFC)</u>

Plaintiff first contends the ALJ improperly determined that his RFC included no limitation on his ability to interact with co-workers. To reiterate, the ALJ found Plaintiff capable of simple, routine, repetitive tasks involving: no exercise of independent judgment or discretion; no more than incidental changes in work processes and no interaction with the general public. Tr. at 30. Also, the ALJ explicitly stated that the RFC assessment does not incorporate limitations regarding the ability to deal with co-workers or supervisors because the Office of

Vocational Rehabilitation (OVR) trial job[2] did not indicate difficulty dealing with co-workers or supervisors as suggested by the psychological adjudicator. Tr. at 38. While Plaintiff is correct that the OVR job trial is not medical opinion evidence; it is, however, competent and appropriate evidence from which the ALJ was free to form an opinion as to Plaintiff's RFC, so long as the ALJ explained conflicting evidence.

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112,119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

The Commissioner/ALJ must "explicitly" weigh all relevant, probative and available evidence . . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition . . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but he/she must consider all the evidence and *give some reason for discounting* the evidence he/she rejects." *Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli*, 247 F.3d at 42-43 (Although an ALJ may weigh conflicting medical and other evidence, he or she must give some indication of the evidence that he or she rejects and explain the reasons for discounting the evidence; where an ALJ failed to

---

[2] The trial job was scheduled to consist of a nine day situational assessment in the Life's Work cafeteria. Plaintiff attended the assessment for only four days, but it was noted that he "neither displayed any sign of pain or discomfort and did not complain about it to his supervisor." Doc. No. 6-7 at 54-55.

7

mention significant contradictory evidence or findings, the Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving the Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him . . . . Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence . . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

Here, the ALJ properly weighed the credibility of the evidence, and explained that while he followed the analysis of the State Agency psychological adjudicator in his RFC including limitations on exposure to the general public, the ALJ also noted that "plaintiff's performance at his OVR trial job does not indicate difficulty dealing with co-workers or supervisors as suggested by the psychological adjudicator, and the RFC does not incorporate such limitations." The Court finds that the ALJ gave an adequate explanation of the evidence he rejected and the reason for doing so. Therefore, the ALJ committed no error in this respect.

B. <u>Vocational Expert-Hypothetical Questions</u>

Plaintiff next argues that the Vocational Expert (VE) cannot provide substantial evidence to support the denial because he did not include the limitations on work place interactions with co-workers and supervisors. The Court has already resolved the issue related to Plaintiff's RFC and found that the ALJ properly considered all the evidence and adequately stated his reasons for rejecting it. Next, however, Plaintiff argues that the jobs of Electronics Worker, Marker and Garment Sorter, under the United States Department of Labor, Dictionary of Occupational Titles

8

(DOT) all require "reasoning skills: apply common sense understanding, to carry out detailed but uninvolved written oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, citing *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984)(citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir.2002), citing *Podedworny*, 745 F.2d at 218 and *Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir.1987) (leading cases on the use of hypothetical questions to VEs).[3] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'") Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself." *Rutherford*, 399 F.3d at 554 n. 8.

---

[3] Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

Additionally, the ALJ will often consult the DOT, a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform. *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002). While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not *necessarily* require reversal or remand of an ALJ's determination, the United States Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand. *Boone v. Barnhart*, 353 F.3d 203, 209 & n.14 (3d. Cir. 2003) (quoting *Burns v. Barnhart*, 312 F.3d 112, 127 (3d Cir. 2002)).

Here, there appears to be no actual conflict between the VE's testimony and the DOT descriptions regarding the jobs of marker or garment sorter. With respect to the job of electrical worker, it is correct that the job requires reading at a rate of 190-215 words per minute. While Plaintiff's reading rate was severely limited, at only the 1st percentile, because Plaintiff could perform the other two jobs listed by the VE, there is no need to remand on this basis. *Jones v. Barnhart*, 364 F.3d 501, 505-06 (3d Cir. 2004) (finding that substantial evidence supported ALJ's decision when applicant could perform two of the three jobs listed by the VE).

## VI. CONCLUSION

Based upon the foregoing, the Court finds that ALJ's decision is supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment (doc. no. 13) will be DENIED, and Defendant's Motion for Summary Judgment (doc. no. 11) will be GRANTED. The decision of the ALJ will be affirmed. An appropriate Order follows.

*/s Arthur J. Schwab*
Arthur J. Schwab
United States District Judge

cc/ecf: All counsel of record.